UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| SCOTT N. JOHNSON, | ) | Case No. 2:10-CV-02387 JAM-DAD |
| Plaintiff, | ) ) | ORDER DISMISSING CASE FOR LACK OF SUBJECT MATTER |
| v. | ) ) | JURISDICTION; DENYING DEFENDANT'S MOTION FOR SUMMARY |
| OVERLOOK AT BLUE RAVINE, LLC, a | ) ) | JUDGMENT; DENYING MOTION TO DECLARE PLAINTIFF A VEXATIOUS |
| California limited liability company, | ) ) | LITIGANT; AND TO SHOW CAUSE AS TO WHY SANCTIONS SHOULD NOT BE |
| Defendant. | ) ) | IMPOSED AGAINST PLAINTIFF |

    This matter comes before the Court on Defendant Overlook at Blue Ravine, LLC's ("Defendant") Motion for Summary Judgment and For an Order Declaring Plaintiff a Vexatious Litigant (Doc. #10). Plaintiff Scott N. Johnson ("Plaintiff") opposes the motion (Doc. #22).[1]

///

///

///

---

[1] This motion was determined to be suitable for decision without oral argument. E.D. Cal. L.R. 230 (g). The hearing was scheduled for June 27, 2012.

1           I.    FACTUAL AND PROCEDURAL BACKGROUND

2     Plaintiff, a quadriplegic, lives in Carmichael, California.

3 Finnerty Decl., Ex. C ("Johnson Depo. Excerpt") (Doc. #15-1) at

4 9:13-18.  As a quadriplegic, Plaintiff requires the use of a

5 service animal, a wheelchair, and a full size van with hand-

6 controls and a wheelchair lift.  Compl. ("Doc. #1) ¶ 1.  Though he

7 plans to continue to reside at his home in Carmichael, California,

8 Plaintiff claims he is looking for an apartment for his twenty-one

9 year old son.  Decl. of Scott N. Johnson ("Johnson Decl.") (Doc.

10 #23) ¶ 7.  Plaintiff's son lives in Carmichael and attends college

11 in Rocklin, California.  Id.  Plaintiff anticipates that while he

12 will continue to live at home, he will frequently visit his son and

13 will stay with him periodically.  Id.  Defendant's apartment

14 complex, the Overlook at Blue Ravine ("the Overlook"), is located

15 in Folsom, California.  Compl. ¶2.  The Overlook, about fifteen

16 miles from Carmichael and Rocklin, is not convenient to either

17 city.  See Decl. of Cathy Tustin ("Tustin Decl.") Ex. 1 (Doc. #27-

18 3) ("Aerial Map").

19     Although the date of Plaintiff's first visit to the Overlook

20 is unknown, Plaintiff informed Defendant about its violations of

21 Title III of the American with Disabilities Act of 1990 ("ADA"), 42

22 U.S.C. § 12182, in a letter dated March 2, 2010.  Compl. ¶ 3.

23 Specifically, Plaintiff alleged that Defendant's parking lot lacked

24 a properly configured van accessible disabled parking space,

25 accessibility route, and appropriate signage.  Id.  In the letter,

26 Plaintiff requested that the parking lot be brought into compliance

27 within ninety days.  Id.

28

1     Four months after sending the letter, on July 12, 2010,

2 Plaintiff visited the Overlook to allegedly obtain rental

3 information, but encountered the same accessibility barriers he

4 complained about in his March 2, 2010 letter.  Johnson Decl. ¶ 2.

5 Since Plaintiff could not access the rental office, he left.  Id.

6 On July 28, 2010, Plaintiff returned a second time to the Overlook,

7 but claims that he left after observing that the parking lot

8 remained non-compliant.  Johnson Decl. ¶ 4.

9     On September 3, 2010, Plaintiff filed the instant Complaint

10 alleging Defendant violated Title III of the ADA by having an

11 improperly configured van accessible disabled parking space,

12 accessibility route, and appropriate signage.  Compl. ¶¶ 11-20.

13 Plaintiff sought injunctive relief to require Defendant to remove

14 all architectural barriers related to his disability under the ADA

15 and monetary damages pursuant to California Civil Code §§ 51, 52.

16 Compl. at 18-19.

17     Defendant filed its Motion for Summary Judgment and an Order

18 Declaring Plaintiff a Vexatious Litigant on May 4, 2012.  Def.'s

19 Mot. for Summ. J. ("MSJ") (Doc. #10).  Shortly thereafter, rather

20 than oppose the MSJ, Plaintiff filed a Request for Dismissal with

21 Prejudice on May 10, 2012 contending that since Defendant removed

22 the architectural barriers, this action is moot (Doc. #18).

23 Defendant filed Objections to Plaintiff's Request for Dismissal on

24 May 15, 2012 arguing that the action should not be dismissed

25 because Plaintiff is requesting a voluntary dismissal only to avoid

26 a near-certain adverse ruling (Doc. #19).  The Court denied

27 Plaintiff's Request for Dismissal on May 16, 2012 (Doc. #20).

28

1                              II.      OPINION

2        A.   <u>Legal Standard</u>

3            1.   <u>Summary Judgment</u>

4        Summary judgment is appropriate when "the pleadings,

5    depositions, answers to interrogatories, and admissions on file,

6    together with affidavits, if any, show that there is no genuine

7    issue as to any material fact and that the moving party is entitled

8    to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); <u>Celotex</u>

9    <u>Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

10       Plaintiff does not dispute any of the facts listed in

11   Defendant's Motion for Summary Judgment.  To grant a motion for

12   summary judgment, "there can be no genuine issue as to any material

13   fact, since a complete failure of proof concerning an essential

14   element of the nonmoving party's case necessarily renders all other

15   facts immaterial."  <u>Celotex</u>, 477 U.S. at 323 (internal quotations

16   omitted).  Since there are no genuine issues as to any material

17   facts, the Court accepts all of Defendant's facts as true.

18       B.   <u>Claims for Relief</u>

19           1.   <u>The Americans With Disabilities Act</u>

20       The American with Disabilities Act of 1990 ("ADA"), 42 U.S.C.

21   § 12182, was enacted "to provide clear, strong, consistent,

22   enforceable standards addressing discrimination against individuals

23   with disabilities."  42 U.S.C. § 12101(b)(2).  Its passage was

24   premised on Congress's finding that discrimination against the

25   disabled is "most often the product, not of invidious animus, but

26   rather of thoughtlessness and indifference," of "benign neglect,"

27   and of "apathetic attitudes rather than affirmative animus."

28   <u>Alexander v. Choate</u>, 469 U.S. 287, 295-96 (1985).  The concept of

                                       4

1  "discrimination" under the ADA "does not extend only to obviously

2  exclusionary conduct — such as a sign stating that persons with

3  disabilities are unwelcome, but rather the ADA proscribes more

4  subtle forms of discrimination — such as difficult-to-navigate

5  restrooms and hard-to-open doors — that interfere with disabled

6  individuals' 'full and equal enjoyment' of places of public

7  accommodation." Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d

8  939, 946 (9th Cir. 2011) (quoting 42 U.S.C. § 12182(a)).

9      A disabled person claiming access discrimination must

10  establish Article III standing in order to maintain a suit under

11  the ADA. Chapman, 631 F.3d at 946. Because the only remedy

12  available to a private litigant under the ADA is an injunction,

13  Plaintiff has the burden of proving both an injury in fact and the

14  real threat of future injury. Id. An ADA plaintiff may show

15  standing to pursue injunctive relief by proving either an injury-

16  in-fact coupled with an intent to return or deterrence from

17  returning to the premises. Id. at 944. Courts are to take a broad

18  view of constitutional standing in disability access cases. Id. at

19  946.

20          a.    Injury-in-Fact and Intent to Return

21              (i) Injury-in-Fact

22      Because the ADA Accessibility Guidelines ("ADAAG") establish

23  the technical standards required for "full and equal enjoyment," if

24  a barrier violating these standards relates to a plaintiff's

25  disability, it will impair the plaintiff's full and equal access,

26  which constitutes "discrimination" under the ADA. Chapman, 631

27  F.3d at 947. That discrimination satisfies the "injury-in-fact"

28  element. Id.

1    Defendant argues that Plaintiff did not suffer an injury-in-
2    fact because he only photographed the alleged barriers and did not
3    personally encounter them.  Plaintiff counters that because the van
4    accessible space was not properly configured, he could not exit the
5    car using his wheelchair lift and had to leave the premises before
6    entering the rental office.

7        Because Plaintiff is a quadriplegic, he requires the use of a
8    wheelchair and wheelchair lift.  The improperly configured van
9    accessible parking space violated the ADAAG and subsequently
10   impaired Plaintiff's full and equal access to the premises.  Thus,
11   Plaintiff has shown an injury-in-fact.

12                    (ii)  Intent to Return
13       "Although encounters with the noncompliant barriers related to
14   one's disability are sufficient to demonstrate an injury-in-fact
15   for standing purposes, a plaintiff seeking injunctive relief must
16   additionally demonstrate 'a sufficient likelihood that he will
17   again be wronged in a similar way.'"  Chapman, 631 F.3d at 948
18   (citing City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983)).

19       Defendant argues that Plaintiff is unlikely to return to the
20   apartment complex.  Plaintiff counters that he is not required to
21   engage in the "futile gesture" of actually returning to the
22   inaccessible place of public accommodation, but that he would like
23   to be able to return once the violations are cured.

24       To determine whether a plaintiff's likelihood of returning to
25   a place of public accommodation is sufficient to confer standing,
26   courts examine factors such as "(1) the proximity of defendant's
27   business to plaintiff's residence, (2) plaintiff's past patronage
28   of defendant's business, (3) the definitiveness of plaintiff's

1  plans to return, and (4) the plaintiff's frequency of travel near

2  defendant." Lema v. Comfort Inn, Merced, 1:10-cv-00362-SMS, 2012

3  WL 1037467 at *5 (E.D. Cal. Mar. 27, 2012) (citing D'Lil v.

4  Stardust Vacation Club, CIV-S-00-1496DFl PAN, 2001 WL 1825832 at *3

5  (E.D. Cal. Dec. 21, 2001)).

6                    A.   Proximity of Place of Public Accommodation

7       The location of Defendant's apartment complex to Plaintiff's

8  residence is approximately fifteen miles.  Thus, the Court finds

9  the relatively close proximity between the complex and the

10  Plaintiff's residence tilts slightly in favor of the Plaintiff.

11                    B.   Past Patronage of Public Accommodation

12      Before Plaintiff's July 12, 2010 visit, he had never been to

13  the Overlook.  Johnson Depo. Excerpt at 64:25-65:1-2.  Therefore,

14  the Court finds this factor strongly favors the Defendant.

15                    C.   Definitiveness of Plans to Return

16      Currently, Plaintiff has no ties to Folsom, California where

17  the Overlook is located.  Plaintiff does not know anyone in the

18  facility, nor has he ever known anyone who resided there.  Id. at

19  64:25-65:2.  Plaintiff lives in Carmichael; Plaintiff's son lives

20  in Carmichael and attends school in Rocklin.  Johnson Decl. ¶ 7.

21  The apartment complex is neither close to Rocklin nor in between

22  Carmichael and Rocklin.  See Aerial Map.  Plaintiff has expressed

23  no definitive plan to return.  See Id. at 64:16-24 (testifying that

24  he has no specific plans to revisit the facility until the action

25  is resolved and the property altercations are complete).  "Such

26  'some day' intentions - without any description of concrete plans,

27  or indeed even any specification of when the some day will be - do

28  not support a finding of the 'actual or imminent' injury."  Lujan

1   v. Defenders of Wildlife, 504 U.S. 555, 564 (1992).  These facts

2   indicate Plaintiff has no definite intent to return to the

3   Overlook, thus this factor strongly favors the Defendant.

4       Additionally, Defendant argues that Plaintiff's extensive

5   litigation history undermines his professed intent to return.

6   Defendant cites Molski v. Mandarin Touch Restaurant, in which a

7   Central District Court found Molski's litigation history undercut

8   his credibility and belied his professed intent to return to the

9   restaurant.  385 F.Supp.2d 1042, 1046 (C.D. Cal. 2005).  Defendant

10  points out that in addition to looking for an apartment at the

11  Overlook, on July 12, 2012, Plaintiff visited between five and ten

12  other facilities.  Johnson Depo. Excerpt at 68:1-6.

13      Since Mandarin Touch Restaurant, the Ninth Circuit has opined

14  that courts must be cautious about affirming credibility

15  determinations that rely on a plaintiff's past ADA litigation.  See

16  D'Lil v. Best Western Encina Lodge & Suites, 538 F.3d 1031, 1040

17  (9th Cir. 2008) ("For the ADA to yield its promise of equal access

18  for the disabled, it may indeed be necessary and desirable for

19  committed individuals to bring serial litigation advancing the time

20  when public accommodations will be compliant with the ADA. . . .

21  Accordingly, [courts] must be particularly cautious about affirming

22  credibility determinations that rely on a plaintiff's past ADA

23  litigation.").  Thus, the Court bases its finding that Plaintiff

24  has no definite intent to return to the Overlook based on the facts

25  of the case and not on Plaintiff's litigation history.

26  ///

27  ///

28

1                     D. <u>Frequency of Travel Near Public Accommodation</u>

2        Plaintiff presents no evidence that he has specific ties to

3 Folsom or the Overlook.   Therefore, this factor strongly favors the

4 Defendant.

5        In summary, the Court finds while Plaintiff has shown an

6 injury-in-fact, he has not demonstrated an intent to return to the

7 Overlook.

8              b.    <u>Deterrence From Returning to the Premises</u>

9        Demonstrating injury-in-fact coupled with an intent to return

10 is but one way for an injured plaintiff to establish Article III

11 standing.  "A disabled individual also suffers a cognizable injury

12 if he is deterred from visiting a noncompliant accommodation

13 because he has encountered barriers related to his disability

14 there." <u>Chapman</u>, 631 F.3d at 949.  The threat of future injury

15 must be sufficiently "imminent" to permit a plaintiff to sue for

16 injunctive relief.  <u>Id.</u>; <u>see also</u> <u>Doran v. 7-Eleven, Inc.</u>, 524 F.3d

17 1034, 1040-41 (9th Cir. 2008) (finding that plaintiff suffered an

18 imminent harm because the ADA violations barred him from

19 patronizing a convenience store and plaintiff demonstrated an

20 intent to return annually once the barriers were removed); <u>Pickern</u>

21 <u>v. Holiday Quality Foods Inc.</u>, 293 F.3d 1133, 1138 (9th Cir. 2002)

22 (holding that plaintiff has standing because the alleged ADA

23 violations prevented plaintiff from shopping at his preferred

24 grocery store, causing plaintiff to suffer an "imminent injury").

25        As discussed <u>supra</u>, though Plaintiff testifies that the ADA

26 violations deter him from returning to the Overlook and that he

27 would like to return once the property altercations are complete,

28 he presents no corroborating evidence.  Thus, the Court finds that

1   while the ADA violations deterred Plaintiff from his full and equal

2   enjoyment of the apartment complex, he completely failed to prove

3   that he was likely to return to the Overlook.  Plaintiff has, thus,

4   failed to satisfy the "imminent injury" requirement.  C.f. Doran,

5   524 F.3d at 1040 (9th Cir. 2008) (plaintiff alleged that he has

6   plans to visit the convenience store at least once a year on his

7   annual trips to Disneyland); Pickern, 293 F.3d at 1135 (plaintiff

8   alleged that the grocery store is near his grandmother and he would

9   like to patronize that store when he visits her).

10  Accordingly, the Court finds that Plaintiff lacks standing.

11  Plaintiff has not demonstrated a real and immediate threat of

12  repeated injury in the future.  Therefore, the Court DISMISSES this

13  case for lack of subject matter jurisdiction and DENIES Defendant's

14  Motion for Summary Judgment as moot.

15

16          2.   Vexatious Litigant

17  The Court's lack of subject matter jurisdiction does not

18  strip it of its power to award sanctions.  28 U.S.C. § 1919; Wilson

19  v. Kayo Oil Co., 535 F.Supp.2d 1063, 1072 (S.D. Cal. 2007) (citing

20  Branson v. Nott, 62 F.3d 287, 293 n. 10 (9th Cir. 1995).  Thus, the

21  Court now turns to issue of whether Plaintiff is a vexatious

22  litigant.

23  "[T]here is strong precedent establishing the inherent power

24  of federal courts to regulate the activities of abusive litigants

25  by imposing carefully tailored restrictions under the appropriate

26  circumstances."  De Long v. Hennessey, 912 F.2d 1144, 1147 (9th

27  Cir. 1990).  Under the power of 28 U.S.C. § 1651(a) (1988),

28  enjoining litigants with abusive and lengthy histories is one such

1  form of restriction that the district court may take, however, such

2  pre-filing orders should be rarely filed.  Id.

3      To issue a pre-filing order, "[t]he plaintiff's claims must

4  not only be numerous, but also be patently without merit."  Moy v.

5  United States, 906 F.2d 467, 470 (9th Cir. 1990).  "An injunction

6  cannot issue merely upon a showing of litigiousness."  Id.

7      The Ninth Circuit requires four factors be proven before a

8  plaintiff may be declared a vexatious litigant: (1) a plaintiff

9  must be given adequate notice to oppose a restrictive pre-filing

10  order before it is entered; (2) a trial court must present an

11  adequate record for review by listing the case filings that support

12  its order; (3) the trial court must further make substantive

13  findings as to the frivolousness or harassing nature of the

14  plaintiff's filings; and (4) the order must be narrowly tailored to

15  remedy only the plaintiff's particular abuses.  O'Loughlin v. Doe,

16  920 F.2d 614, 617 (9th Cir. 1990).

17                    a.  Adequate Notice

18      Defendant filed a motion asking the Court to issue an order

19  declaring Plaintiff a vexatious litigant on May 4, 2012.  Plaintiff

20  opposed the motion on June 6, 2012.  Therefore, the Court finds

21  that Plaintiff had adequate notice and an opportunity to respond.

22                    b.  Record for Review

23      "An adequate record for review should include a listing of all

24  the cases and motions that led the district court to conclude that

25  a vexatious litigant order was needed.  At the least, the record

26  needs to show, in some manner, that the litigant's activities were

27  numerous or abusive."  De Long, 912 F.2d at 1147 (internal citation

28  omitted).

1    Defendant presents the Court with a comprehensive list of over

2  2,000 cases organized by name and number.  See Finnerty Decl.

3  (Doc. #12-1).  The Court finds the record for review is adequate in

4  terms of the listing of cases but, as discussed below, is lacking

5  in proof that the litigant's activities were abusive.

6              c.   Frivolousness or Harassing Nature of Claims

7      This is the heart of the vexatious litigant analysis.  The

8  district court must "look at both the number and content of the

9  filings as indicia of the frivolousness of the litigant's claims."

10 Molski v. Evergreen Dynasty Corp., 500 F.3d 1047, 1059 (9th Cir.

11 2007) (internal quotations omitted).  "[I]t is incumbent on the

12 court to make substantive findings as to the frivolous or harassing

13 nature of the litigant's actions."  De Long, 912 F.2d at 1148.

14     Defendant argues that nearly all of Plaintiff's complaints

15 contain the same boilerplate language, Plaintiff's contrived

16 allegations are not credible, Plaintiff claims duplicitous

17 injuries, and Plaintiff has a high settlement rate.

18     Plaintiff counters by distinguishing this action from Molski

19 v. Evergreen Dynasty Corp., a case in which the Ninth Circuit

20 affirmed the district court's order declaring the plaintiff a

21 vexatious litigant.  500 F.3d 1047 (9th Cir. 2007).  In Evergreen

22 Dynasty, the plaintiff, Molski, traveled to several restaurants on

23 the same day, several days in a row, and alleged that at each

24 restaurant he injured his shoulders in the process of transferring

25 himself from his wheelchair to the toilet.  500 F.3d at 1051.  The

26 Evergreen Dynasty court found that Molksi had plainly lied in his

27 filings because the court did not believe he suffered thirteen

28 nearly identical injuries, generally to the same part of his body,

12

in the course of performing the same activity, over a five-day period.  Id. at 1052.  Additionally, Molski often waited a year to file suit to rack up daily damages.  Id. at 1060.  The Evergreen Dynasty court found this strategy evidenced an intent to harass businesses into settlements.  Id.  Plaintiff, on the other hand, argues that he includes at least one written notice and a period for which the defendant could remove the barriers before filing suit.  Furthermore, he argues that he does not ask for daily damages or actual damages in excess of the statutory minimum.

     The Court finds that while Plaintiff has filed a high volume of cases, it cannot say with any certainty that all, or even a majority of the cases are so frivolous or harassing as to warrant the conclusion that Plaintiff is a vexatious litigant.  In the instant case, for example, the evidence appears to support a conclusion that Defendant violated the ADA.  Furthermore, Defendant's argument that the instant lawsuit is frivolous because Plaintiff engages in duplicitous injury claims is based upon Defendant's assertion that "[t]hese benign parking elements are not the kind of architectural barriers that give rise to [humiliation, embarrassment, emotional damage and minimal physical injury]."  MSJ at 22:27-28.  That argument demonstrates the exact "thoughtlessness and indifference" the ADA is designed to discourage.  Alexander v. Choate, 469 U.S. 287, 295-96 (1985).  Defendant also argues that Plaintiff's cases are frivolous because Plaintiff lacks standing to prosecute those cases.  While the Court is dismissing the instant case for lack of standing, "[m]erely because a claim lacks jurisdiction does not make the claim per se frivolous."  De Long, 912 F.2d at 1148.  Additionally, Defendant's argument that

13

1  Plaintiff's other cases must lack standing because they are
2  textually and factually similar to the instant case is unsupported
3  by the evidence before the Court.  The Court will not speculate
4  about the merits of cases not before it.

5       Finally, Defendant's argument that Plaintiff's high settlement
6  rate evinces harassing legal tactics is unpersuasive.  Defendant
7  provides no support that a high settlement rate demonstrates a
8  harassing litigation strategy.  Additionally, that argument calls
9  for speculation.

10              d.   Narrowly Tailored Remedy

11      Narrowly tailored orders are needed to "prevent infringement
12  on the litigator's right of access to the courts." DeLong, 912
13  F.2d at 1148 (internal citation omitted). The Court does not have
14  to reach this issue because it finds that Defendant failed to
15  provide sufficient evidence to support a substantive finding as to
16  the frivolousness or harassing nature of Plaintiff's filings.

17      Accordingly, after evaluating the DeLong factors, the Court
18  finds that an order declaring Plaintiff a vexatious litigant is not
19  warranted.  Thus, Defendant's motion for an order declaring
20  Plaintiff a vexatious litigant is DENIED.

21          3.   Sanctions

22      The District Court has the inherent power to levy sanctions in
23  response to abusive litigation practices.  Roadway Express, Inc. v.
24  Piper, 447 U.S. 752, 765-66 (1980).  "A district court has inherent
25  power to award attorney's fees for bad faith conduct." Earthquake
26  Sound Corp. v. Bumper Indus., 352 F.3d 1210, 1220 (9th Cir. 2003).
27  Furthermore, the Local Rules allow the Court to use its inherent
28  power to sanction for noncompliance with its rules.  L.R. 110.

1  This Court has adopted the Rules of Professional Conduct for the

2  State Bar of California and the Model Rules of Professional

3  Responsibility of the American Bar Association may be considered

4  for guidance.  L.R. 180(e).

5      Despite the Court's refusal to grant Defendant's motion for

6  an order finding Plaintiff to be a vexatious litigant, the Court

7  still believes that sanctions should be imposed against Plaintiff

8  in the instant case for his failure to dismiss this lawsuit after

9  it became clear that he lacked standing.  Plaintiff presumably

10 relied on the 2002 Ninth Circuit case Pickern v. Holiday Quality

11 Foods Inc. to support his apparent belief that did not need to

12 engage in a "futile gesture" of actually returning to the Overlook

13 to establish standing.  293 F.3d 1133, 1133 (9th Cir. 2002).  While

14 that argument might have been plausible when the Complaint was

15 filed in 2010, in January 2011, in Chapman v. Pier 1 Imports (U.S.)

16 Inc., the Ninth Circuit clarified the standing requirements for ADA

17 Plaintiffs.  631 F.3d 939, 953 (9th Cir. 2011) (holding that a

18 plaintiff lacks standing "if he is indifferent to returning to the

19 [place of public accommodation] or if his alleged intent to return

20 is not genuine.").  As discussed supra, Plaintiff fails to allege

21 any fact or present any evidence of an imminent injury supported by

22 a concrete or genuine intent to return to the Overlook.

23 Furthermore, Plaintiff never sought leave to amend his Complaint to

24 meet the Chapman standing requirements.

25     Once Chapman was issued in January 2011, Plaintiff had a

26 professional obligation to dismiss this lawsuit, since he knew, at

27 that time, that there were no facts to support his belief that he

28 had standing.  See Model R. of Prof'l Conduct Rule 3.1 ("A lawyer

1   shall not bring . . . a proceeding . . . unless there is a basis in

2   law. . . ."); Model R. of Prof'l Conduct R. 3.3(a)(2) ("A lawyer

3   shall not knowingly fail to disclose to the tribunal legal

4   authority . . . known to the lawyer to be directly adverse to the

5   position of the client. . . ."). Instead, Plaintiff waited until

6   May 10, 2012, well over a year after Chapman was issued, and after

7   Defendant had already filed its Motion for Summary Judgment, to

8   voluntarily dismiss his case, on grounds unrelated to standing.

9       The Court notes that this case is distinguishable from Wilson

10  v. Kayo Oil Co., 563 F.3d 979, 980 (9th Cir. 2009).  There, the

11  Ninth Circuit reversed the district court's imposition of sanctions

12  for lack of standing in an ADA case.  Id.  The Ninth Circuit found

13  that the Wilson district court's standing decision was contrary to

14  the Ninth Circuit's opinion in Doran v. 7-Eleven, 524 F.3d 1034,

15  1041 (9th Cir. 2008).  The instant case is distinguishable because

16  while Plaintiff may have believed he had standing when he filed his

17  case in 2010, Chapman made it abundantly clear that he lacked

18  standing and, therefore, should have dismissed this action rather

19  than allow it to continue for approximately eighteen additional

20  months.

21      This Court has previously sanctioned Plaintiff for his failure

22  to make a reasonable inquiry as to whether the factual allegations

23  of his complaint had evidentiary support.  See Johnson v. Kybych,

24  No. 2:08-cv-02651-JAM-KJN, Doc. #24 (E.D. Cal. May 21, 2009).

25  Similarly, in this case, Plaintiff failed to make a reasonable

26  inquiry as to whether he had standing under the applicable law.  As

27  an attorney who has filed over 2,000 ADA cases, Plaintiff should be

28  well-aware of the requirements for standing under the ADA.

1

2   Thus, for all the aforementioned reasons, the Court finds that

3 sanctions against Plaintiff should be imposed in the form of a

4 reimbursement payment to Defendant for its reasonable attorneys'

5 fees for the period from or about February 1, 2011 to the present.

6 Before it can impose sanctions, however, the Court is required to

7 provide notice to Plaintiff of exactly which conduct is

8 sanctionable and give him an opportunity to show cause as to why

9 sanctions should not be imposed.  See In re DeVille, 361 F.3d 539,

10 549 (9th Cir. 2004).  This Order to Show Cause serves as the

11 required notice.  The Court orders Plaintiff to submit a written

12 response to this Order to Show Cause by August 10, 2012.  At the

13 same time, the Court invites Defendant's counsel to submit a

14 supplemental affidavit with billing timesheets by August 10, 2012

15 demonstrating the amount of attorneys' fees and costs incurred by

16 Defendant between February 1, 2011 and the present.  See L.R. 293

17 for guidance. Upon receipt of this information, the Court will

18 issue a supplemental Order setting forth the amount of sanctions,

19 if any, to be paid by Plaintiff to Defendant.

20

21                          III. ORDER

22      For the reasons set forth above:

23      This action is DISMISSED for lack of subject matter

24 jurisdiction;

25      Defendant's Motion for Summary Judgment is DENIED as moot;

26 and

27      Defendant's Request for an Order Declaring Plaintiff

28 Vexatious Litigant is DENIED.

1

2    Plaintiff and Defendant shall submit supplemental filings

3 in accordance with this Order by August 10, 2012.

4    IT IS SO ORDERED.

5 Dated:  July 20, 2012.

6                                          _____
                                           JOHN A. MENDEZ,
7                                          UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28